UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOSE O. PUERTO-HERNANDEZ,

                Petitioner,                    Case No. 1:25-cv-1097

v.                                      Honorable Paul L. Maloney

ROBERT LYNCH et al.,

                Respondents.

_____/

## OPINION

       This is a habeas corpus action pursuant to 28 U.S.C. § 2241. It involves the continued detention of a noncitizen pending appeal under an automatic stay of an order for his release on conditions imposed by an immigration judge (IJ) after hearing.

       Petitioner Jose O. Puerto-Hernandez is detained by the United States Immigration and Customs Enforcement (ICE) at the North Lake Processing Center (North Lake) in Baldwin, Lake County, Michigan. In his verified petition for writ of habeas corpus and complaint for declaratory and injunctive relief (Pet., ECF No. 1), Petitioner challenges the lawfulness of his detention and asks the Court for the following relief: to issue a writ of habeas corpus ordering Respondents to release Petitioner on bond or to show cause as to why Petitioner should remain detained pursuant to the United States Department of Homeland Security's appeal based solely upon the July 8, 2025, mandatory detention policy memorandum; issue a writ of habeas corpus directing Respondents to pursue a constitutionally adequate process to justify adverse immigration actions against the Petitioner; enjoin Respondents from removing Petitioner from the United States pending the resolution of this case; declare the process as applied to Petitioner by Respondents violates the

Due Process Clause of the Fifth Amendment, the INA, the Administrative Procedures Act, and federal regulations; declare that Petitioner may remain in the United States pending adjudication of his self-petition for Special Immigrant Juvenile classification and subsequently pursue adjustment of status upon approval; stay Petitioner's removal from the United States until he exhausts the process, successfully or otherwise, of pursuing relief from removal by virtue of the Special Immigrant Juvenile Status and parole into the country for purposes of adjustment; and to award attorneys' fees and costs for this action. (Pet., ECF No. 1, PageID.41–42.)

On September 29, 2025, the Court entered an order (ECF No. 3) pursuant to 28 U.S.C. § 2243, directing Respondents to show cause as to why the writ of habeas corpus and other relief requested in the petition should not be granted, and directing Petitioner to file a reply. The parties complied, and this matter is before the Court for consideration. For the reasons stated below, the Court will grant Petitioner's petition for writ of habeas corpus, in part, and order Respondents to release Petitioner on bond under the terms set by the IJ. The Court will deny the remainder of the petition as the Court lacks jurisdiction under the INA, § 1252(g), to grant the requested relief.

<u>Discussion</u>

## I.    Factual Background

The facts of this case are not in dispute. Petitioner is an 18-year-old citizen and national of Honduras, who entered the United States unlawfully with his mother as a child in June of 2019. (Pet., ECF No. 1, PageID.11–12.) United States Border Patrol encountered Petitioner and his mother upon their entry into the United States and served them with Notices to Appear, charging them with inadmissibility under the Immigration and Nationality Act (INA), but the United States Department of Homeland Security did not file the notices with an immigration court. (Resp., ECF No. 4, PageID.133.)

On August 21, 2024, a New Jersey Superior Court adjudicated Petitioner abandoned and neglected by his father and concluded that it would not be in Petitioner's best interests to return to Honduras. (Pet., ECF No. 1, PageID.12.) On July 9, 2025, Petitioner filed an application for Special Immigrant Juvenile (SIJ) status. (*Id.*; ECF No. 4-2, PageID.170–188.) His petition for SIJ status remains pending. (Pet., ECF No. 1, PageID.3.)

On August 13, 2025, United States Immigration and Customs Enforcement (ICE) stopped Petitioner and arrested and detained him. (*Id.*, PageID.6.) Petitioner is charged with having entered the United States without inspection or parole and not being in possession of a valid immigration document of identity or nationality at the time of apprehension. (*Id.*, PageID.7.) At the time of his arrest, Petitioner had no criminal record or pre-existing orders of removal. (*Id.*, PageID.6.)

On August 15, 2025, Petitioner filed a motion for bond determination before the Elizabeth Immigration Court. (Resp. ECF No. 4, PageID.133.) And, on August 20, 2025, Petitioner filed a second petition for SIJ status, indicating that he was in removal proceedings. (*Id.*, PageID.134; ECF No. 4-3, PageID.190–218.) On August 26, 2025, the Elizabeth Immigration Court held a hearing and granted Petitioner's request for bond (*id.*), ordering that Petitioner be released from custody under bond of $5,000. (Immigration Court Ord., ECF No. 1-2, PageID.45 (Bond Order).)

DHS subsequently filed a notice of intent to appeal custody redetermination, invoking the automatic stay provided for in 8 C.F.R. § 1003.19.(i)(2), which has kept Petitioner in ICE custody. (Resp., ECF No. 4 PageID.133; ECF N0. 1-6, PageID.89.) DHS filed its appeal with the Board of Immigration Appeals (BIA) on September 9, 2025. (ECF No. 1-6, PageID.57–86.)

On September 17, 2025, Petitioner filed his verified petition for writ of habeas corpus and complaint for declaratory and injunctive relief. (Pet., ECF No. 1.) Petitioner names as Respondents

Field Office Director of the Detroit Field Office of ICE Robert Lynch, Acting Director of ICE Todd Lyons, and United States Secretary of Homeland Security Kristi Noem. (*Id.*, PageID.12.)

On September 18, 2025, ICE served Petitioner with a notice to appear, charging Petitioner with inadmissibility under INA § 212(a)(6)(A)(i)(I). (Resp., ECF No. 4, PageID.134.) Petitioner is currently scheduled to appear before the Detroit Immigration Court on October 27, 2025. (*Id.*, PageID.135.)

## II.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). The primary habeas corpus statute, 28 U.S.C. § 2241, confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration related matters. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)

## III.    Jurisdiction

In the September 29, 2025, order to show cause, the Court requested that the parties address the threshold question of the Court's jurisdiction to grant the requested relief. (Ord., ECF No. 3, PageID.130.) Respondents argue that the commencement of removal proceedings by noncitizens who have applied for but have not yet received SIJ status is not reviewable in habeas. (Resp., ECF No. 1, PageID.154–55.) They do not challenge this Court's jurisdiction as it relates to all immigration-related matters but cite 8 U.S.C. § 1252(g) for the proposition that federal courts lack "jurisdiction to review the commencement and adjudication of removal proceedings." (*Id.*) Petitioner contends that, while § 1252(g) may preclude the Court from terminating removal proceedings generally, it poses no bar to Petitioner's request for release from detention pursuant

to the bond order of the IJ during the pendency of his removal proceedings. (Reply, ECF No. 5, PageID.236.)

The central question here is whether the Court may exercise jurisdiction over Petitioner's claims. For the following reasons, the Court finds that § 1252(g) does not preclude the Court's review of Petitioner's § 2241 petition to the extent that it requests release from detention, but that the Court lacks jurisdiction to consider Petitioner's remaining claims.

The United States government is a "carefully crafted system of checked and balanced power within each Branch" that serves as the "greatest security against tyranny — the accumulation of excessive authority in a single Branch." *Mistretta v. United States*, 488 U.S. 361, 381 (1989). In keeping with this core principle, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). This includes in the course of immigration proceedings.

> Before and after the enactment in 1875 of the first statute regulating immigration, 18 Stat. 477, [federal habeas corpus] jurisdiction was regularly invoked on behalf of noncitizens, particularly in the immigration context.... In case after case, courts answered questions of law in habeas corpus proceedings brought by aliens challenging Executive interpretations of the immigration laws.

*Id.* at 305–07 (alteration in original). *See also, e.g., Demore v. Kim*, 538 U.S. 510, 517 (2003) (holding that § 1226(e) of the INA limiting judicial review of the Attorney General's discretionary judgments regarding detention and release did not preclude the Court of jurisdiction to grant habeas relief in the context of a challenge to detention under the no-bail provision of the INA); *Zadvydas*, 533 U.S. at 688 (holding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" under the INA).

Against this historical backdrop of the use of habeas corpus to review unlawful detention in immigration proceedings, Respondents argue that this case falls outside of the scope of the writ under common law. They contend that Petitioner's claim for relief stems from the commencement of removal proceedings and that the scope of habeas review in cases such as Petitioner's has been limited by Congress under 8 U.S.C. § 1252(g).

Enacted in 1996, § 1252 governs "judicial review" of orders of removal. Subsection (g) provides:

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, ... no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This statute limits—but does not wholly divest—courts of jurisdiction to grant habeas relief in the context of immigration-related proceedings.

The Supreme Court, in *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999), first examined the scope of § 1252(g) in an action seeking declaratory and injunctive relief against the Attorney General and others related to deportation actions. *Id.* at 473–74. Finding that the newly enacted § 1252 divested the Court of jurisdiction to hear the challenges posed by the respondents, the Court nonetheless rejected the approach advanced by Respondents here. It cautioned that § 1252 does not cover "the universe of deportation claims," but is much narrower: "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* at 482. The Court explained that it would be "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*; *see also Dep't of Homeland Sec. v. Regents of the Univ. of*

6

*California*, 140 S. Ct. 1891, 1907 (2020) (reaffirming the "narrow" nature of § 1252(g), and holding that § 1252(g) did not bar an action challenging the rescission of Deferred Action for Childhood Arrivals (DACA), which was "not a decision to 'commence proceedings,' much less to 'adjudicate' a case or 'execute' a removal order.").

Later, in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), a majority of the Court explicitly rejected the notion that a habeas challenge to continued detention falls within the scope of § 1252(g): "The concurrence contends that 'detention is an "action taken . . . to remove" an alien' and that therefore 'even the narrowest reading of "arising from" must cover' the claims raised by respondents. We do not follow this logic." *Id.* at 295 n.3 (quoting Thomas, J., concurring in part and concurring in judgment). And when faced with this issue, lower courts have overwhelmingly agreed that courts have jurisdiction to entertain habeas challenges to the legality of a noncitizen's detention. *See, e.g., Eliseo v. Olson*, No. 25-3381, 2025 WL 2886729, at *5 (D. Minn. Oct. 8, 2025) (citing, *inter alia*, *Cardoso v. Reno*, 216 F.3d 512, 516 (5th Cir. 2000); *Mosqueda v. Noem*, No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530, at *3 (C.D. Cal. Sept. 8, 2025); *Kostak v. Trump*, No. 3:25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428, 2025 WL 2430025, at 5–7 (D. Md. Aug. 24, 2025); *Espinoza, et al., v. Kaiser, et al.*, No. 1:25-cv-01101 JLT SKO, 2025 WL 2675785, at *9 (E.D. Cal. Sep. 18, 2025); *See also Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (holding that § 1252(g) does not bar a habeas claim of "illegal detention" as it is "plainly collateral to ICE's prosecutorial decision to execute Kong's removal"); *Mustata v. U.S. Dep't of Just.*, 179 F.3d 1017, 1019 (6th Cir. 1999) ("We conclude that 8 U.S.C. § 1252(g) does not eliminate jurisdiction over the Mustatas' 28 U.S.C. § 2241 habeas petition."); *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 304 (5th Cir. 1999)

(holding that § 1252(g) does not bar a habeas review and noting that the Fourth, Sixth, Eighth, Tenth, and Eleventh Circuits have all held the same).

Here too, Petitioner's action requesting a writ of habeas corpus ordering Respondents to release Petitioner on bond does not seek the review of a discretionary decision to "commence proceedings," "adjudicate" a case, or "execute" a removal order. Petitioner seeks a writ of habeas corpus to challenge his continued detention without bond or "constitutionally adequate process" pursuant to the mandatory detention policy. This action falls outside of the narrow scope of § 1252(g) and within this Court's jurisdiction.

Petitioner also asks this Court to declare that he may remain in the United States and to stay his removal from the United States pending a decision on his pending petitions for SIJ status. As discussed above, Respondents argue that § 1252(g) strips the Court of jurisdiction to consider Petitioner's claims, which undoubtedly relate to removal. However, Petitioner invokes the Suspension Clause of the United States Constitution, also known as the Great Writ, as an independent basis for habeas corpus. (Reply, ECF No. 5, PageID.235.)

Petitioner places great emphasis on his pending application for SIJ status. In 1990, Congress established SIJ status "to protect abused, neglected or abandoned children who, with their families, illegally entered the United States, and it entrusted the review of SIJ petitions to USCIS, a component of [the Department of Homeland Security]." *Osorio-Martinez v. Attorney Gen. United States of Am.*, 893 F.3d 153, 163 (3d Cir. 2018) (internal quotation marks and citations omitted). SIJ status provides a pathway to lawful permanent residency: once a juvenile immigrant's SIJ petition is approved, the juvenile immigrant may then apply to adjust their status to lawful permanent resident. 8 U.S.C. § 1255(a), (h).

To qualify for SIJ status, the immigrant must be a person:

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status . . .

*R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 361–62 (S.D.N.Y. 2019) (quoting 8 U.S.C. § 1101(a)(27)(J)). Under the SIJ statue, "juvenile" includes individuals up to age 21. *Id.* (citing 8 C.F.R. § 204.11(c)(1)).

Petitioner is under 21 years old, and it is undisputed that he has satisfied the first and second requirements of the statute; all that remains is for consideration and possible consent by the USCIS, as delegate of the Secretary of Homeland Security. Importantly, however, to qualify for SIJ status, applicants must also be physically present in the United States. 8 U.S.C. § 1101(a)(27)(J)(i); 8 C.F.R. § 204.11(c). Thus, should Petitioner be removed from the United States, he would lose all ability to continue to pursue his SIJ status petition. This appears to be the basis for Petitioner's invocation of the Suspension Clause.

The Suspension Clause forbids suspension of the writ of habeas corpus "unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I, § 9, cl. 2. As the Court explained in *Boumediene v. Bush*, 553 U.S. 723 (2008):

The Clause protects the rights of the detained by a means consistent with the essential design of the Constitution. It ensures that, except during periods of formal suspension, the Judiciary will have a time-tested device, the writ, to maintain the 'delicate balance of governance' that is itself the surest safeguard of liberty.

9

*Id.* at 745. This includes in the face of otherwise valid jurisdiction stripping statutes where the Suspension Clause ensures that "[h]abeas remains available to ensure that no branch of government detains a person in violation of law. *See Boumediene*, 553 U.S. at 765 ("[T]he writ . . . is itself an indispensable mechanism for monitoring the separation of powers.")." *Eliseo*, 2025 WL 2886729 at *6.

The *Boumediene* Court set forth a two-part inquiry for determining whether the Suspension Clause applies to make habeas relief available in the face of an otherwise valid jurisdiction-stripping statute: (1) the Court must "determine whether a given habeas petitioner is prohibited from invoking the Suspension Clause due to some attribute of the petitioner or to the circumstances surrounding his arrest or detention." *Osorio-Martinez*, 893 F.3d at 166 (internal quotation marks and citations omitted). "Then, if the petitioner is not prohibited from invoking the Suspension Clause, [this Court must] turn to the question whether the substitute for habeas is adequate and effective to test the legality of the petitioner's detention (or removal)." *Id.*

Despite the Court's inclination to find that Petitioner has satisfied each of the foregoing questions, the Suspension Clause nonetheless does not apply. The Court in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), clarified that the Suspension Clause applies only to those "core" habeas claims seeking release from custody, which fell within the scope of habeas release "when the Constitution was drafted and ratified." *Id.* at 108. It does not include claims seeking relief from removal in the immigration context. *Id.* at 119. Accordingly, in keeping with *Thuraissigiam*, the Court finds that the Suspension Clause does not apply here and, therefore, § 1252(g) precludes the Court's jurisdiction over Petitioner's claims seeking a stay of his removal. The Court will therefore dismiss the remainder of the petition because it lacks jurisdiction over Petitioner's claims which do not seek release from detention.

## IV.    Exhaustion

Respondents contend that this Court should deny Petitioner's request for habeas corpus relief because Petitioner has not exhausted his administrative remedies. (Resp., ECF No. 4, PageID.132.) Specifically, Respondents argue that Petitioner should first pursue his claims of wrongful detention before the BIA. (*Id.*, PageID.136.) In response, Petitioner argues that there is no precedent requiring exhaustion in cases like this (Reply, ECF No. 5, PageID.236) and requiring Petitioner to first pursue his appeal before the BIA would result in irreparable injury in the face of continued illegal detention and would be futile given the BIA's position articulated in *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025) (*id.*, PageID.237). The Court agrees that exhaustion is not mandatory and finds that it will not require exhaustion here.

First, the parties appear to agree that no applicable statute or rule mandates administrative exhaustion by Petitioner. Thus, whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)) (internal quotation marks omitted). This discretion is referred to as "prudential" exhaustion, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019), and such a court-made exhaustion rule must comply with statutory schemes and Congressional intent, *Shearson*, 725 F.3d at 593–94. Notably, the United States Court of Appeals for the Sixth Circuit has not yet decided "whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *See Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)). However, as Respondents note (Resp., ECF No. 4, PageID.136), courts within the Sixth Circuit "have applied the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983), to determine whether prudential exhaustion should be required." *See Lopez-*

*Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025).

Under that authority,

> courts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

Upon consideration of those factors, this Court concludes that prudential exhaustion should not be required in this case. First, the central question presented by Petitioner's § 2241 petition is whether 8 U.S.C. § 1225 or 8 U.S.C. § 1226 applies to Petitioner. That determination relies upon a purely legal question of statutory interpretation and does not require the record that would be developed should the Court require Petitioner to exhaust his administrative remedies. Moreover, this Court is not bound by and is not required to give deference to any agency interpretation of a statute. *See Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) (noting that "courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

Second, Petitioner's constitutional challenge to his detention does not require exhaustion. The Sixth Circuit has noted that due process challenges, such as the one raised by Petitioner here, generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006).

12

And third, administrative review is not likely to allow the agency to correct its own mistakes and to preclude the need for judicial review if Petitioner is successful. It is Petitioner's position that he is detained under § 1226, rather than § 1225, and that the automatic stay violates Petitioner's right to due process. However, the BIA recently proclaimed that *any* individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (2025). It is simply implausible that the BIA would change its position, regardless of the arguments set forth in this particular case, thus precluding meaningful review.

Accordingly, for the foregoing reasons, this Court concludes that each of the three factors weigh against requiring exhaustion in this case. Therefore, prudential exhaustion is not required.

## V.     Merits Discussion

### A.     Petitioner's Detention Is Governed by § 1226.

Petitioner contends that Respondents have violated the INA by concluding that Petitioner is detained pursuant to the mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(2). (Pet., ECF No. 1, PageID.8–9.) According to Petitioner, noncitizens who "are charged as inadmissible for having entered the United States without inspection and who have resided in the United States for more than two years" are detained pursuant to 8 U.S.C. § 1226(a). (*Id.*, PageID.9.) Respondents, however, contend that Petitioner "unambiguously meets every element for detention under § 1225(b)(2)," and that "even if the text of § 1225(b)(2) were ambiguous, its structure and history support the agency's interpretation of the statute." (ECF No. 4, PageID.137.) To address the Parties' arguments, the Court must examine the two primary statutory provisions at play: 8 U.S.C. § 1225 and § 1226.

Section 1225(b)(2)(a) provides that

in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title

8 U.S.C. § 1225(b)(2)(a).

Section 1226(a), on the other hand, "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). It states:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c)[1] and pending such decision, the Attorney General

(1) may continue to detain the arrested alien; and

(2) may release the alien on

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole . . .

8 U.S.C. § 1226(a).

In sum, both provisions govern the detention of noncitizens pending removal proceedings; the critical difference is that § 1225 provides for mandatory detention, while § 1226 allows for the release of the noncitizen on conditional parole or bond. For the following reasons, the Court finds that Petitioner's detention is governed by § 1226.

Respondents contend that Petitioner is detained pursuant to § 1225 because he is an applicant for admission, seeking admission, and who is not clearly and beyond a doubt entitled to be admitted. (Resp., ECF No. 4, PageID.138.) Respondents further argue that any "unadmitted"

---

[1] Subsection (c) refers to the "[d]etention of criminal aliens," which does not apply here. *See* 8 U.S.C. § 1226(c).

noncitizen is an "'applicant[] for admission' regardless of their proximity to the border, the length of time they have been present in the United States, or whether they ever had the subjective intent to properly apply for admission." (*Id.*) They explain that the INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." (*Id.* (quoting 8 U.S.C. § 1101(a)(13)).

Petitioner claims that "§ 1226(a) applies to noncitizens without lawful status who are arrested within the country" and "sets forth 'the default rule' for detaining noncitizens 'already present in the United States.'" (Reply, ECF No. 5, PageID.238–39 (quoting *Jennings*, 583 U.S. at 303)).

To address the parties' arguments, this Court must engage in principles of statutory interpretation. "A statute should be construed so that effect is given to all its provisions." *Corey v. United States*, 556 U.S. 303, 314 (2009); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022 (noting how courts "must give effect to the clear meaning of statutes as written"). When engaging in statutory interpretation, the Court's "inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)). However, ambiguity is not determined by examining provisions in isolation. "[T]he 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012). This Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Raimondo*, 603 U.S. at 400. Examining the statute as a whole, in line with the guiding principles of statutory construction,

this Court agrees with the numerous other courts in the country that have concluded that Respondents' interpretation of the statute is simply much too broad.

The text of § 1225(b)(2)(A) provides for the detention of an "alien seeking admission" after an "examining immigration officer" determines that the alien "is not clearly and beyond a doubt entitled to be admitted." An "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." *See id.* § 1225(a)(1). The INA further defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See* 8 U.S.C. § 1101(a)(13). At issue is whether "an alien present in the United States who has not been admitted" includes individuals like Petitioner who have been present in the United States for years, but who did not enter lawfully.

Although the terms of § 1225 may seem unambiguous when viewed in isolation, context matters. *Yates v. United States*, 574 U.S. 528, 537 (2015) (emphasizing the importance of context even when a statutory term is unambiguous). Section 1225 is titled, "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." A title, such as this "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates*, 574 U.S. at 552 (Alito, J., concurring in judgment). Congress' decision to include the word "arriving," as well as the decision to include references to methods of physical arrival, such as "stowaways" and as "crewmen" evidences an intent to address noncitizens coming to the United States—whether on one side of the border or the other—and who are presently "seeking admission" into the United States. *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing to *Dubin v. United States*, 599 U.S. 110, 118 (2023)).

16

But more importantly, Respondents' interpretation urges this Court to turn a blind eye to the remainder of the statutory scheme. Courts are instructed to "construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486 (2105). Whereas § 1225 governs the treatment of "arriving aliens," § 1226 is much broader, referring to all other aliens not lawfully present but not arriving. To read § 1226 otherwise would ignore recent amendments to § 1226 and render Congress' recent actions entirely superfluous, a result that this Court has long been instructed to avoid. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

Just this year, Congress enacted the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025), which amended § 1226 to prescribe a subset of noncitizens who are exempt from the discretionary bond analysis. Specifically, the Act added a subsection that explicitly mandates detention for those noncitizens who are inadmissible under §§ 1182(a)(6)(A), 1182(a)(6)(C), and 1182(a)(7), *and* who have been arrested for, charged with, or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E). Notably, § 1182(a)(6)(A) refers to "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General . . .", in other words, someone like Petitioner. If all individuals like Petitioner, "present in the United States without being admitted or paroled," were already subject to mandatory detention under § 1225, then there would have been no need for Congress to amend the INA to provide for mandatory detention of individuals who were "present in the United States without being admitted or paroled" *and* who were arrested, charged, or committed certain crimes. Quite simply, were the Court to agree with Respondents' interpretation of §§ 1225 and

1226, the Court would be nullifying Congress's intent and rendering § 1226(c)(1)(E) entirely superfluous.

Considering the foregoing, the Court concludes that § 1226(a), and not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States and were already present within the United States without being admitted or paroled at the time that they were apprehended.[2] Therefore, the Court will examine the impact of the automatic stay on Petitioner's Fifth Amendment due process rights.

### B.    The Automatic Stay Under 8 C.F.R. § 1003.19(i)(2) Violates Petitioner's Fifth Amendment Due Process Rights

The Supreme Court has held that "[o]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 682. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Id.* at 690. The Fifth Amendment's Due Process Clause extends to all persons, regardless of status.

---

[2] This Court is far from the first federal district court to reach this conclusion. *See, e.g.*, *Lopez-Campos*, 2025 WL 2496379, at *8; *see also Rodriguez v. Bostock*, 779 F. Supp. 3d at 1256–61; *Singh v. Lewis*, No. 4:25-cv-96-RGJ, 2025 WL 2699219, at *3–5 (W.D. Ky. Sept. 22, 2025); *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7–12 (W.D. Tex. Sept. 22, 2025); *Campos Leon v. Forestal*, 1:25-cv-1774-SEB-MJD, 2025 WL 2694763, at *2–5 (S.D. Ind. Sept. 22, 2025); *Hasan v. Crawford*, No. 1:25-cv-1408 (LMB/IDD), 2025 WL 2682255, at *5–9 (E.D. Va. Sept. 19, 2025); *Garcia Cortes v. Noem*, No. 1:25-cv-2677-CNS, 2025 WL 2652880, at *2–3 (D. Colo. Sept. 16, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136, at *2–4 (W.D. La. Aug. 27, 2025); *Romero v. Hyde*, No. 1:25-cv-11631-BEM, 2025 WL 2403827, at *8–13 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411, at *9–16 (D. Minn. Aug. 15, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *6–9 (D. Mass. Aug. 14, 2025); *Lopez Benitez v. Francis*, No. 1:25-cv-05937-DEH, 2025 WL 2371588, at *3–9 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Figueroa*, No. 2:25-cv-02157-DLR, 2025 WL 2337099, at *6–11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *6–8 (D. Mass. July 7, 2025).

*See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes noncitizens, like Petitioner. *See id.*; *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990); *Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 236837, at *4 (6th Cir. Jan. 18. 2023).

To determine whether a civil detention violates a detainee's Fifth Amendment procedural due process rights, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (applying the *Matthews v. Eldridge* test in the context of immigration). *Matthews v. Eldridge* requires a court to consider the following three factors: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

### 1.    Private Interest

There is no dispute that Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *See Hamdi*, 542 U.S. at 529. The Court may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 at *7 (D. Minn. May 21, 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Respondents do not claim that the conditions of Petitioner's confinement at North Lake differ in any material way from criminal incarceration. Petitioner is now detained at a facility that is halfway across the country from his mother and community; there can be no doubt that he is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 2025 WL 1459154 at *7.

19

It is worth noting that, while Respondents represent that Petitioner's case is presently set for hearing, the invoked automatic stay does not have a certain end date. "If the BIA does not resolve the appeal within the ninety-day period, ICE can seek a discretionary stay for an additional 30 days." *Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *10 (D. Mass. Sept. 9, 2025) (citing 8 C.F.R. § 1003.6(c)(5)). The matter can also be referred to the Attorney General, who can stay the case *indefinitely* pending disposition. 8 C.F.R. § 1003.6(d) (emphasis added). Therefore, the "private interest" factors strongly weighs in favor of Petitioner.

### 2.    Risk of Error

Given the nature of the automatic stay, the risk of error is high. Under the automatic stay, *only* noncitizens who have already prevailed in a judicial bond hearing are subject to continued detention without any individualized assessment.

Here, the IJ, acting as an impartial decision-maker, reviewed the testimony and evidence presented at the bond hearing that Petitioner is an 18-year-old recent high school graduate who lives at home with his mother, has strong ties to his community, and has no criminal record. (ECF No. 1-8, PageID.93–126.) Based upon the evidence presented, the IJ made an independent decision that Petitioner was eligible for release from custody under bond of $5,000. (ECF No. 1-6, PageID.87.) Under the automatic stay provision, that decision of the IJ is entirely inconsequential, nothing more than an "empty gesture." *See Ashley v. Ridge*, 288 F. Supp. 2d 662, 668, 671 (D.N.J. 2003) (holding that the automatic stay regulation creates a "patently unfair situation by 'tak[ing] the stay decision out of the hands of the judges altogether and giv[ing] it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified'" and "renders the Immigration Judge's bail determination an empty gesture"). The automatic stay provision strips the process of any impartiality, allowing Respondents to act both as the

prosecution and the judge in making a unilateral and unreviewed decision as to detention. This presents a risk of error weighing in favor of Petitioner.

> **3.      Respondents' Competing Interests and Burdens of Additional or Substitute Procedures**

Lastly, the Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." *See Sampiao*, 2025 WL 2607924, at \*12. However, on the record before the Court, Respondents have made only highly speculative arguments regarding Petitioner's risk of flight. (*See* ECF NO. 1-6, PageID.84 (arguing that Petitioner's decision not to voluntarily provide evidence that he filed taxes in United States with his request for bond could be an indicator of possible criminal activity)). Notably, continuing to enforce Petitioner's detention would likely impose more costs upon the Government, as it would be required to continue funding and overseeing Petitioner's detention. *See Sampiao*, 2025 WL 2607924, at \*12.

Moreover, the INA has in place a procedure that would allow Respondents to seek a stay before an impartial decision-maker based upon an individualized assessment. Under 8 U.S.C. § 1003.19(i)(1),

> [t]he Board of Immigration Appeals (Board) has the authority to stay the order of an immigration judge redetermining the conditions of custody of an alien when the Department of Homeland Security appeals the custody decision or on its own motion. DHS is entitled to seek a discretionary stay (whether or not on an emergency basis) from the Board in connection with such an appeal at any time.

8 C.F.R. § 1003.19(i)(1). Respondents do not argue that they were unable to request a stay. Therefore, the Court concludes that Respondents' interests are adequately protected by alternative mechanisms already in place.

In sum, the Court's balancing of the *Matthews v. Eldridge* factors weighs in Petitioner's favor. Therefore, the Court finds that Petitioner's current detention violates Petitioner's Fifth

Amendment due process rights. As the Eastern District of Michigan recently stated, "[t]he recent shift to use the mandatory detention framework under Section 1225(b)(2)(A) is not only wrong but also fundamentally unfair. In a nation of laws vetted and implemented by Congress, we don't get to arbitrarily choose which laws we feel like following when they best suit our interests." *Lopez-Campos*, 2025 WL 2496379, at *10.

Because the IJ is in the better position to evaluate whether Petitioner poses a flight risk and a danger to the community, the Court defers to the IJ's sound discretion and will order Petitioner's immediate release on the terms set by the IJ, including the bond of $5,000.

## VI.   Request for Dismissal of Respondents Lyons and Noem

Respondents request that the Court dismiss as Respondents Acting Director of ICE Todd Lyons and United States Secretary of Homeland Security Kristi Noem because they are not custodians within the meaning of 28 U.S.C. § 2243. (Resp., ECF No. 4, PageID.159.) "The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Circuit Ct. of Ky.*, 410 U.S. 494–95 (1973). Thus,

> [r]ead literally, the language of [§] 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495.

The Sixth Circuit has "concluded that a detained alien generally must designate his immediate custodian—the INS District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). Here, Petitioner has named Field Office Director of the Detroit Field Office of ICE Robert Lynch

as a Respondent and Petitioner's immediate custodian. (Pet., ECF No. 1, PageID.12.) Respondent

contends that Lynch is the only proper Respondent in this case. (Resp., ECF No. 4, PageID.159.)

In *Roman*, the Sixth Circuit stated that while it "conclude[d] that the immediate custodian

rule generally applies to alien habeas corpus petitioners, [there is] the possibility of exceptions to

this rule." *Roman*, 340 F.3d at 322. The *Roman* court went on to note:

> Some courts are also willing to make an exception to the immediate custodian rule
> in other extraordinary circumstances. For example, courts have noted the INS's
> ability, as a practical matter, to deny aliens any meaningful opportunity to seek
> habeas corpus relief simply by transferring aliens to another district any time they
> filed a habeas corpus petition. *Chavez–Rivas,* 194 F. Supp. 2d at 374. Aliens
> remaining in detention for extended periods are often transferred several times
> during their detention. *See Lee v. Ashcroft,* 216 F. Supp .2d 51, 55 (E.D.N.Y.2002)
> ("[T]he location of custody, and the identity of the day-to-day custodian, frequently
> change when detainees are transferred among INS facilities, all of which are under
> the control of the Attorney General."); Rosenbloom, *supra,* at 549. In light of these
> transfers, one court reasoned that an alien may properly name a respondent other
> than his immediate custodian because a petition naming a higher level official, such
> as the Attorney General, could be adjudicated without interruption in the event of
> a transfer. *Arias–Agramonte,* 2000 WL 1617999, at *8 (explaining that a petition
> naming only one's immediate custodian would be dismissed when the alien was
> transferred to another local district).

*Id.* at 325–26. Thus, the Sixth Circuit concluded, "an exception might be appropriate if the INS

were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326.

In light of the foregoing and to ensure that Respondents maintain authority to enforce this

Court's grant of habeas relief in the event of a transfer, the Court will not dismiss Acting Director

Lyons and Secretary Noem as Respondents to these proceedings.

## Conclusion

For the reasons discussed above, the Court will enter an order and judgment granting the

petition pursuant to 28 U.S.C. § 2241 as it pertains to Petitioner's request for a writ of habeas

corpus ordering Respondents to release Petitioner on bond. Petitioner shall be released from

custody, immediately, subject to the conditions previously imposed by the Immigration Judge,

including the $5,000 bond. Within two (2) business days of the date of this order, Respondents shall file a status report with the Court to certify compliance with the Court's opinion and judgment.

The Court will deny the petition as to Petitioner's remaining requests for relief for lack of jurisdiction under § 1252(g).

The Court will deny Respondents' request to dismiss Respondents Lyons and Noem.


Dated:   October 28, 2025                              /s/ Paul L. Maloney
                                                       Paul L. Maloney
                                                       United States District Judge